RECEIVED
IN LAKE CHARLES, LA

SEP 29 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| HOLLY JACQUES TURNER, ET AL. | : | DOCKET NO. 2:10 CV 771 |
| VS. | : | JUDGE MINALDI |
| OM FINANCIAL LIFE INSURANCE CO. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court are Cross-Motions for Summary Judgment filed by the Defendant, OM Financial Life Insurance Company ("OM Financial") [Doc. 13], and the Plaintiffs, Holly Jacques Turner and Sean Jacques [Doc. 20]. Both the Plaintiffs and OM Financial filed Oppositions [Docs. 16 and 25, respectively], and the Plaintiffs filed a Reply [Doc. 26].

## FACTS

In this action, the Plaintiffs seek benefits under a life insurance policy issued to their father, Robert T. Jacques, by Fidelity and Guaranty Life Insurance Company, now known as OM Financial Life Insurance Company. Although OM Financial contends that Mr. Jacques' policy lapsed for nonpayment of premiums approximately four months before his death, the Plaintiffs assert that they are nonetheless entitled to benefits under the policy because OM Financial failed to issue a premium notice required by state law.

Mr. Jacques' policy was a "Flexible Premium Adjustable Death Benefit Life Insurance Policy," Number U7B3600.[1] Unlike traditional life insurance policies, which typically require the insured to pay a fixed premium to sustain coverage, flexible premium policies allow the

---

[1] Compl. ¶ 10 [Doc. 1-2]; Def.'s Mot. Summ. J. Ex. 2-A, 2 [Doc. 13-3].

1

policyholder to choose the amount and frequency of premium payments.[2] Any premiums paid are deposited into an interest-bearing account, and the insurer deducts the cost of insurance and certain expenses from the account on a monthly basis.[3] Regardless of whether the insured pays the planned premiums, coverage under the policy continues so long as the account value is sufficient to cover the monthly deduction.[4] Specifically, Mr. Jacques' policy provided, "[i]f you stop making your premium payments, the coverage under this policy . . . will be continued until the surrender value is not enough to cover the monthly deduction."[5]

In the event that the account value became insufficient to cover the monthly deduction, the policy provided for a sixty-one day "Grace Period" during which coverage under the policy would continue.[6] OM Financial was required to notify Mr. Jacques of the deficiency at least

---

[2] *See* Pls.' Mot. Summ. J. Ex. 1, Dep. of Russell Laws 11:15-12:2 [Doc. 20-3].

[3] *See id.*

[4] *See id.*

[5] Def.'s Mot. Summ. J. Ex. 2-A, 10 [Doc. 13-3]. The policy defined surrender value as the account value less unpaid loans and interest and any surrender charge. *Id.* at 13. It defined account value as follows:

The account value on the [date on which coverage starts] will be the initial premium paid. The account value on any date after [that date] will be: (A) − (B) + (C) − (D) −(E) + (F) + (G) where:

- (A) is the account value on the last Monthly Date
- (B) is the monthly deduction which follows the last Monthly Date
- (C) is the interest to date on (A) − (B)
- (D) is any partial surrender made since the last Monthly Date, including any charge therefor;
- (E) is interest to date on (D) from the date of partial surrender;
- (F) is any premium received since the last Monthly Date;
- (G) is interest to date on (F) from the date of receipt. *Id.*.

[6] *See id.* at 10.

2

thirty-one days before the end of the Grace Period.[7] If Mr. Jacques failed to pay additional premiums sufficient to cover the monthly deductions by the end of the Grace Period, the policy would lapse.[8]

Mr. Jacques purchased his policy on October 16, 1989.[9] At that time, he selected a "planned premium" of $5000, to be paid annually on October 16.[10] Thereafter, OM Financial sent Mr. Jacques a "Premium Due Notice" reminding him of his planned premium payment on September 16 of each year.[11] Mr. Jacques paid his planned premium in most years but elected not to do so others.[12]

The Plaintiffs allege that Mr. Jacques was mandatorily evacuated from his home from September 2008 until December 2008 a result of Hurricane Ike.[13] Consequently, he did not receive the annual "Premium Due Notice" OM Financial sent to him on September 16, 2008 and did not pay his planned premium for that year.[14] Coincidentally, the September 2008 monthly deduction depleted the surrender value of Mr. Jacques' policy below the monthly cost of insurance on the day before Mr. Jacques' 2008 planned premium was due.[15] As of October 15,

---

[7] *Id.*

[8] *Id.*

[9] Compl. ¶ 2.

[10] Pls.' Mot. Summ. J. Ex. 1, Dep. of Russell Laws 31:18-32:1 [Doc. 20-3].

[11] Def.'s Mot. Summ. J. Ex. 2, Aff. of Russell Laws ¶ 5 [Doc. 13-3].

[12] Specifically, OM Financial's records show that Mr. Jacques did not pay his annual planned premium in 2004 or 2005. *Id.* at 64:6-18. Because his account value was sufficient to cover his monthly deductions in those years, coverage under the policy nevertheless continued.

[13] Compl. ¶ 4.

[14] Def.'s Mot. Summ. J. Ex. 2, Aff. of Russell Laws ¶¶ 9, 12 [Doc. 13-3].

[15] *See* Pls.' Mot. Summ. J. Ex. 1, Dep. of Russell Laws 42:20-43:19 [Doc. 20-3].

2008, the cash surrender value of Mr. Jacques' policy was $ 198.14, and the monthly deduction at the time was approximately $938.00.[16]

On October 17, 2008, OM Financial sent a "Grace Period Notice" to Mr. Jacques' home address informing him that the surrender value of his policy was no longer sufficient to cover his monthly deduction. The notice further stated that the policy would lapse if Mr. Jacques did not make a premium payment of $2813.97 before the sixty-one day Grace Period ended December 16, 2008.[17] The Plaintiffs claim that Mr. Jacques did not discover this notice until he returned to his home in mid-December and failed to make any premium payment before the Grace Period expired as a result.[18]

Accordingly, OM Financial sent Mr. Jacques a "Notice of Lapse" on December 16, 2008.[19] The notice informed Mr. Jacques that he could apply for reinstatement of coverage but that reinstatement would be contingent on the approval of his application by OM Financial's home office.[20] Mr. Jacques submitted an application for reinstatement on December 23, 2008, which OM Financial denied on March 31, 2009.[21] Mr. Jacques died less than a month later on April 29, 2009.

On May 10, 2010, the Plaintiffs filed this action seeking full payment of the policy proceeds to them as the named beneficiaries under the policy. They first assert that OM

---

[16] *Id.* at 43:20-25.

[17] Def.'s Mot. Summ. J. Ex. 2-E, OMLIFE00073 [Doc. 13-3].

[18] *See* Compl. ¶ 12.

[19] Def.'s Mot. Summ. J. Ex. 2-F, OMLIFE00074 [Doc. 13-3].

[20] *Id.*

[21] Compl. ¶ 13-14.

4

Financial failed to comply with statutory notice requirements for the cancellation of a life insurance policy, and accordingly that the policy was never effectively cancelled. In the alternative, they argue that because Mr. Jacques could not possibly have received the lapse notices sent by OM Financial because he was under mandatory evacuation from Hurricane Ike, the principle of *contra non valentem* prevented his policy from lapsing. Additionally, the Plaintiffs seek penalty interest under La. R.S. 1811.

Both parties now move for summary judgment on the issue of whether OM Financial properly notified Mr. Jacques of the premium payments required to prevent the lapse of his policy in accordance with Louisiana law. OM Financial further seeks summary judgment on the Plaintiffs' *contra non valentem* argument.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light

most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party..." *Id.*

## ANALYSIS

### COMPLIANCE WITH STATUTORY NOTICE REQUIREMENTS

La. R.S. 22: 905 requires insurers to send written notice before terminating a life insurance policy for the nonpayment of premiums. It provides, in pertinent part:

> No life insurer shall, within one year after default in payment of any premium, installment, loan or interest, declare forfeited or lapsed any policy . . . for non-payment when due of any premium, installment, loan or interest, or any portion thereof . . . unless a written or printed notice stating:
>
> (1) The amount of such premium, installment, loan or interest, or portion thereof due on such policy; and
>
> (2) The place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed to the owner of the policy . . . at the last known post office address of such insured . . . at least fifteen and not more than forty-five days prior to the date when the same is payable.
>
> No policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice.

The application of La. R.S. 22:905 to flexible premium policies appears to be an issue of first impression.[22] Because La. R.S. 22:905 is a forfeiture statute, it must be strictly construed in favor of the insured. *First Am. Bank & Trust v. Texas Life Ins. Co.*, 10 F.3d 332, 335 (5th Cir. 1994). Its purpose is to protect the insured from losing coverage due to mere inadvertence and to

---

[22] While the court in *Hayes v. Hartford Life and Accident Ins. Co.*, No. 6:07-1034, 2008 U.S. Dist. LEXIS 8564, at *12-14 (W.D. La. 2008) (unpublished) cited La. R.S. 22:905 in a case involving a flexible premium life insurance policy, it did not address the timing of the lapse notice sent to the insured. Rather, the issue in that case was whether the insurer had correctly concluded that the policy had actually lapsed according to its terms.

give the insured a "fair chance to meet the payments when due." *Vining v. State Farm Life Ins. Co.*, 409 So.2d 1306 (La. App. 2d 1982) (citing *Lester v. Aetna Life Ins. Co.*, 295 F. Supp. 1208, 1214 (W.D. La. 1970).

OM Financial asserts that its September 16, 2008 Premium Due Notice satisfied the statute's requirements in the present case.[23] In particular, it points out that it mailed the notice to Mr. Jacques' last known address within the statutory fifteen to forty-five days before the planned premium payment was due and more than thirty days before it declared the policy lapsed.

The plain language of La. R.S. 22:905, however, requires that the notice reference the specific premium payment necessary to prevent lapse of the policy and state its amount ("No life insurer shall . . . declare forfeited or lapsed any policy . . . for non-payment when due of any premium . . . unless a written or printed notice stating [t]he amount of *such* premium . . . shall have been duly addressed and mailed to the person whose life is insured . . . "). The Premium Due Notice reminded Mr. Jacques of his $5000 planned premium payment scheduled for October 16, 2008. It is undisputed, however, that Mr. Jacques' policy did not require him to pay his planned premiums in order to maintain coverage. Indeed, Mr. Jacques had missed multiple planned premium payments before 2008, and his coverage had nevertheless continued. The only reason Mr. Jacques' policy lapsed when he failed to pay his planned premium for 2008 was that the "due date" for that planned premium happened to coincide with the date that the surrender value of his policy became insufficient to cover his monthly deductions.[24]

Thus, OM Financial did not declare Mr. Jacques' policy lapsed because he failed to pay the $5000 planned premium referenced in the Premium Due Notice. While it is true that

---

[23] *See* Def.'s Mot. Summ. J. 11-12 [Doc. 13].

[24] *See* Pls.' Mot. Summ. J. Ex. 1, Dep. of Russell Laws 45:8-24.

7

coverage under the policy would have continued until March 16, 2009 if Mr. Jacques had paid his planned premium,[25] $5000 was not the *amount* of premium required to continue coverage under the policy.[26] On the contrary, Mr. Jacques could have continued his coverage for another month by paying a premium sufficient to cover his $938 deduction for the next month.[27]

Because OM Financial therefore did not declare Mr. Jacques' policy lapsed for his failure to pay the $5000 planned premium referenced in the September 16, 2008 Premium Due Notice and because the Premium Due Notice failed to inform Mr. Jacques of the amount of premium payment actually required to keep his policy in force, it failed to fulfill the requirements of La. R.S. 22:905. To hold otherwise would undermine the statute's purpose to "give [the insured] a fair chance to meet the payments when due." *Lester*, 295 F. Supp. at 1216 (citing *Boring v. Louisiana State Insurance Company*, 154 La. 549, 97 So. 856, 858 (1923)). As previously noted, the payment of planned premiums was not required to maintain coverage under Mr. Jacques' policy, and Mr. Jacques had missed multiple planned premiums in the past. The Premium Due Notice was therefore useless to inform him of the premium payments necessary to prevent the lapse of his policy.[28]

---

[25] *Id.* at 50:2-5.

[26] OM Financial admitted as much in its "Grace Period Notice," which informed Mr. Jacques that a premium payment of only $2813.19 would allow him to maintain coverage through December 16, 2008.

[27] *Id.* at 45:15-19.

[28] The Plaintiffs cite *Lester*, 295 F. Supp. at 1214-16 for the proposition that La. R.S. 22:905's purpose creates an implicit requirement that the mandated notice include a warning that failure to pay premiums when due will result in a forfeiture of coverage. Specifically, they state that "the Court in *Lester* found a simple premium notice, without informing the insured that the policy was in danger of lapsing, was not sufficient under the statute." Pls.' Mot. Summ. J. 11.
  This argument is not persuasive. In *Lester*, the court found that the insured's policy lapsed both because he failed to pay a premium and because his indebtedness on a loan he had taken out on the policy prevented him from taking advantage of an "automatic premium loan

8

The only notice OM Financial sent to Mr. Jacques effectively informing him of the amount of premium due to prevent the lapse of his policy was the October 17, 2008 Grace Period Notice. That notice, however, was mailed sixty days before the due date of the requested payment, outside of the fifteen to forty-five day time limit set forth in the notice statute.

Because OM Financial therefore failed to comply with La. R.S. 22:905, it did not have the power to declare Mr. Jacques' policy lapsed. Accordingly, Plaintiffs are entitled to recover $350,000, the face amount of the policy, less the amount of premiums necessary to cover monthly deductions through the date of Mr. Jacques' death, April 29, 2009. *See Lester*, 295 F. Supp. at 1216.

### PENALTY INTEREST

The Plaintiffs additionally seek penalty interest under La. R.S. 22:1811, which states:

> All death claims arising under policies of insurance issued or delivered within this state shall be settled by the insurer within sixty days after the date of receipt of due proof of death, and if the insurer fails to do so without just cause, the amount due shall bear interest at the rate of eight percent per annum from date of receipt of due proof of death by the insurer until paid.

Here, OM Financial had reasonable grounds to believe that Mr. Jacques' policy had lapsed. Accordingly, the award of penalty interest is not appropriate in this case. *See Vining*, 409

---

provision" which otherwise would have prevented the policy from lapsing. The court therefore found that a notice informing the insured of the amount of premium due but containing no mention of the loan was insufficient under La. R.S. 22:905, which explicitly states that the required notice must contain the amount of any loan causing the policy to lapse.

The court made no mention of any failure of the notice to inform the insured that his policy would lapse if he failed to make the requested premium payment. In fact, it specifically acknowledged that a 1958 amendment to the statute dispensed of any requirement that insurer warn the insured that nonpayment would result in forfeiture of coverage. *See Lester*, 295 F. Supp. at 1214 n.4.

Nevertheless, the statute *does* require that the notice inform the insured of the *amount* of premium due to prevent lapse of the policy, regardless of whether it explicitly states that nonpayment of that amount will result in lapse. OM Financial's Premium Due Notice failed to do so in this case.

9

So. 2d at 1313 (although insurer failed to prove compliance with statutory notice requirements, its denial of death benefits was not without just cause); *Ledoux v. Old Republic Life Ins. Co.*, 233 So. 2d 731 (La. App. 3 Cir. 1970) (given the novelty and complexity of the legal issues presented, insurer was not arbitrary or capricious in failing to pay the amount claimed).

## CONTRA NON VALENTEM

Because the Court finds that OM Financial's failure to comply with statutory notice requirements prevented Mr. Jacques' policy from lapsing, it need not consider the Plaintiffs' *contra non valentem* argument.

## CONCLUSION

For the reasons stated herein, the Plaintiffs' motion for summary judgment will be GRANTED IN PART and DENIED IN PART, and the Defendant's motion for summary judgment will be DENIED.

Lake Charles, Louisiana, this 27 day of September 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE